JOSEPH P. RUSSONIELLO (SBN 44332)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
JONATHAN U. LEE (SBN 148792)
Assistant United States Attorney

450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102
Telephone:       (415) 436-6909
Facsimile:        (415) 436-6748
Email: jonathan.lee@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COUNTY OF SANTA CRUZ, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CENTERS FOR MEDICARE AND )<br>MEDICAID SERVICES, )<br>)<br>Defendant. )<br>)<br>)<br>)<br>_____ ) | No. C 07-2889 MMC<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**<br><br>Date:    June 20, 2008<br>Time:   10:30 a.m.<br>Place:   Courtroom 7, 19th Floor<br>            450 Golden Gate Avenue<br>            San Francisco, CA<br>Judge:   Hon. Maxine M. Chesney |

According to Northern District Civil Local Rule 16-9, requiring counsel to file a Joint Case Management Statement addressing all of the topics set forth in the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, dated March 1, 2007, the parties through their counsel file the following Joint Case Management Statement:

1. <u>Jurisdiction and Service</u>

The Court has jurisdiction under the Freedom of Information Act. Defendant has been served.

2. <u>Relevant Facts</u>

Defendant: This case concerns requests for documents made by plaintiffs under FOIA in

December 2006 and in January 2007, seeking county level data that plaintiff's believe the agency maintains as an agency record. The agency uses outside contractors to prepare periodic updates to certain cost adjustment factors used to determine reimbursement levels used by the agency. The contractors gather data from various sources to compute the several adjustment factors, but there are no county level data sets of the kind requested by the plaintiffs that are agency records.

The Agency responded on August 20, 2007, advising plaintiffs that the Agency was unable to locate any documents specifically responsive to the January FOIA request and enclosed the November 1995 report from Health Economics Research Inc: <u>Assessment and Redesign of Medicare Fee Schedule Areas (Localities), Volume I</u>.

The Agency further responded on August 27, 2007, advising plaintiffs that the Agency was unable to locate responsive documents for items 1-9 and 16-19 of the December FOIA request. The Agency further advised that items 13-15 and item 24 were publicly available from the annual publication of the Medicare Physician Fee Schedule final rule in the Federal Register. Nevertheless, the Agency provided plaintiffs with the following documents and information: (1) the conversion factor responsive to item 25 of the FOIA request; (2) the three reports previously referenced, and; (3) a existing subset of data which had been created for the California Medical Association (CMA), which was partially responsive to items 10-12 and 20-23 of Ms. Riddle's request, in that it contained the 2006 Geographic Practice Cost Indexes (GPCI's), the Geographic Adjustment Factors (GAF's), and the Relative Value Units (RVU's) for physicians services for each county in the United States. The Agency also explained that this subset of data had been an exceptional ad hoc data compilation for utilization as a research and analysis aid, and was not routinely created by CMS.

Later in 2007, plaintiffs identified a retired Agency employee who indicated to plaintiffs' counsel that the records requested did exist. The Agency followed up on this information and ascertained that no county-level aggregation of data, which is what plaintiffs requested, existed.

Plaintiff's position: After productive attempts at informally resolving some of the issues arising out of plaintiffs' FOIA requests from December 2006 and January 2007, the remainder of the disputed issues revolve around the existence of county-level GPCIs, RVUs, and GAFs that

are used in the calculation of payments to physicians under Part B of Medicare. Although the agency denies that such data exists or that it has possession of such data, in the past the agency has provided Excel spreadsheets to the California Medical Association ("CMA") containing the requested data for every county in the United States for the years 1999, 2002, 2005, and 2006. When the agency denied the existence of the requested data (see Complaint, Ex. E), plaintiffs transmitted a CD to the agency containing the spreadsheet with the 2005 county-level data (see Complaint, Ex. F). The agency then took the position that the 2005 data was "created on a one time basis" for the CMA.

    Locality-level GPCIs, RVUs and GAFs are aggregates of county-level GPCIs, RVUs, and GAFs. This is confirmed by the agency's own description of the process (unchanged in its use of county-level data as the basic building blocks since 1992) in 68 FR 49030, 49039-49044 (8/15/2003) and 69 FR 47488, 47502-47504 (8/5/2004). This is also confirmed by the extensive description of the aggregation process contained in the "Fourth Update to the Geographic Practice Cost Index" (Bearing Point, 3/12/2004). As the agency stated in 69 FR 47504, "All three of the [GPCIs] for a specific fee schedule locality are based on the [GPCIs] for the individual counties within the respective fee schedule localities."

    Plaintiffs have confirmed with one of the principal authors of the "Fourth Update" that county-level data was used to create the locality-level data. Plaintiffs have also confirmed with the person currently in charge of Medicare accounts at the contractor that produced the "Fourth Update" that the company routinely transmits all data compiled in creating all Medicare reports to the agency and considers that data proprietary to the agency. Finally, plaintiffs have confirmed with a former supervisory employee of the agency (who was responsible for developing much of the methodology underlying the Physician Fee Schedule under Part B of Medicare) that county-level data was provided to the agency on a regular basis by its contractors and that data had been forwarded to the CMA several times in the past.

    3. <u>Legal Issues</u>

    A. Have plaintiffs failed to exhaust administrative remedies when they failed to pursue the available administrative review of the processing of their requests, thwarting the ability of

    the agency to respond and either correct processing errors or make a record for review in this court? In re Steele, 799 F.2d 461, 466 (9th Cir. 1986) (citations omitted).

B. Whether CMS' search for the documents requested was adequate. Citizens Against UFO Secrecy, Inc. v. Department of Defense, No. 99-00108, slip op. at 8 (D. Ariz. March 30, 2000) (declaring that "[a] fruitless search result is immaterial if [d]efendant can establish that it conducted a search reasonably calculated to uncover all relevant documents"), aff'd, 21 F.App'x. 774 (9th Cir. 2001).

C. FOIA: Whether CMS 'improperly'; (2) 'withheld'; (3) 'agency records.'" See 5 U.S.C. § 552 (a)(4)(b).

D. FOIA: Are plaintiffs' claims moot because CMS produced all non-exempt documents located after reasonably calculated search? Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir.1985) ("In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, non-conclusory affidavits submitted in good faith."); Tri-Valley Cares v. Department of Energy, 203 Fed.Appx. 105, 107 (9th Cir. 2006) (affirming summary judgment on same basis) and citing Papa v. U.S., 281 F.3d 1004, 1013 (9th Cir. 2002) (production, "however belatedly," moots FOIA claims).

4. Motions

Defendant: Defendant anticipates filing a motion to dismiss and/or motion for summary judgment on the adequacy of its search and exhaustion of remedies. Discovery, if any, should be delayed until the Court rules on the motions, in accordance with case law cited herein.

Plaintiff: Plaintiffs anticipate filing a motion to amend the complaint to add allegations relating to plaintiffs' third FOIA request dated 7/17/2007 to which the agency has failed to submit a substantive response. This request was submitted to the agency after the complaint in this matter was filed and plaintiffs have been unable to obtain an informal resolution of the agency's failure to respond.

5. Amendment to the Pleadings

    Defendant: None anticipated

6. Evidence Preservation

1    Defendant's counsel has issued an evidence preservation letter to CMS.

2    7.  Disclosures

3    Defendant opposes initial disclosures and discovery generally (see #8 below).

4    8.  Discovery

5    Defendant opposes discovery and requests that discovery be stayed pending the outcome of defendant's anticipated motions. A district court "has wide latitude in controlling discovery, and its rulings will not be overturned in absence of a clear abuse of discretion." White v. City of San Diego, 605 F.2d 455, 461 (9th Cir. 1979) (internal quotations omitted). While ordinarily the discovery process grants each party access to evidence, in FOIA cases discovery is limited because the underlying case revolves around the propriety of revealing certain documents. Wiener v. FBI, 943 F.2d 972, 977 (9th Cir. 1991). Accordingly, in these cases courts may allow the government to move for summary judgment before the plaintiff conducts discovery. See Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("The court's denial of discovery ... was within [its] discretion.... Generally, FOIA cases should be handled on motions for summary judgment...."); Nolan v. Dep't of Justice, 973 F.2d 843, 849 (10th Cir. 1992) ("[T]he district court acted well within its discretion in deferring discovery so as to determine the propriety of the [Privacy Act] exemptions."); Simmons v. Dep't of Justice, 796 F.2d 709, 711-12 (4th Cir. 1986) ("[T]he district court has the discretion to limit discovery in FOIA cases and to enter summary judgment on the basis of agency affidavits ...."); see also Broaddrick v. Exec. Office of the President, 139 F.Supp.2d 55, 63 (D.D.C. 2001) ("[D]iscovery is not typically a part of FOIA and Privacy Act cases, and whether to permit discovery is well within the sound discretion of the district court judge.") (citation omitted).

If, however, the Court sets a discovery schedule permitting written discovery and depositions, the agency requests that it be permitted an equal opportunity to take discovery from plaintiffs and third parties identified by plaintiffs as having knowledge of plaintiffs' allegations.

Plaintiff: Plaintiffs believe discovery is proper given: (a) the contradictory positions taken by the agency as to the existence of the requested data; and (b) the existence of witnesses whose testimony plaintiffs believe will establish the existence of the requested data and the agency's

1  possession of that data.

2      9. Class Actions

3      See #10 below.

4      10. Related Cases

5      Plaintiffs have also brought a class action lawsuit, titled County of Santa Cruz, et al. v.

6  Leavitt, Secretary of the Department of Health and Human Services, C 07-2888 MJJ, in which

7  they allege, under the Medicare Act, 42 U.S.C. § 1395ff(b)(1)(A), the Administrative Procedure

8  Act, 5 U.S.C. §§ 701-706, and the Due Process and Equal Protection Clauses of the Fifth

9  Amendment, Secretary Leavitt should reconfigure all localities by applying the 5-percent

10 iterative method uniformly to all counties in the country, rather than to existing fee schedule

11 areas within a state. The Court granted Secretary Leavitt's motion to dismiss, and plaintiffs have

12 appealed to the Ninth Circuit.

13     11. Relief Sought

14     Plaintiff's complaint seeks injunctive relief.

15     12. Settlement and ADR

16     The parties attended mediation with Howard Herman. The mediation took place on April

17 1, 2008. The defendant provided supplemental information, as the parties agreed at the end of

18 the mediation, two weeks later. The case did not settle.

19     13. Consent to Magistrate Judge For All Purposes

20     The parties do not consent.

21     14. Other References

22     None at this time.

23     15. Narrowing of Issues

24     See discussion of motions above.

25     16. Expedited Schedule

26     None suggested.

27     17. Scheduling

28     Defendant requests that following the Court's ruling on defendant's dispositive motions the

1  Court conduct a further case management conference, as necessary, and set case management
2  dates at that time.
3      Plaintiff:  Plaintiffs request that the Court set a discovery schedule which will allow plaintiffs
4  to propound written discovery and take approximately 6-8 depositions.
5      18. Trial
6      Defendant requests that following the Court's ruling on defendant's dispositive motions the
7  Court conduct a further case management conference, as necessary, and set case management
8  dates at that time.
9      19. Disclosure of Non-Party Interested Entities or Persons
10     Federal Defendant believes they are exempt from this requirement because they are federal
11 governmental entities or federal officers.
12     20. Such Other Matters As May Facilitate Just, Speedy and Inexpensive Resolution
13     None noted at this time.

DATED: June 13, 2008            COREY, LUZAICH, PLISKA,
                                DEGHETALDI & NASTARI, LLP

                                        /s/
                                _____
                                DARIO DEGHETALDI, ESQ.
                                Attorneys for Plaintiffs

DATED: June 13, 2008            JOSEPH P. RUSSONIELLO
                                United States Attorney

                                        /s/
                                _____
                                JONATHAN U. LEE
                                Assistant United States Attorney
                                Attorneys for Federal Defendant

**PROPOSED ORDER**

DATED: _____         _____
                                THE HON. MAXINE M. CHESNEY
                                United States District Court Judge